**IN THE COURT OF APPEALS OF IOWA**

No. 21-0440
Filed July 21, 2021

**IN THE INTEREST OF H.S. and N.S.,**
**Minor Children,**

**B.S., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Mary L. Timko, Associate Juvenile Judge.

The mother appeals the termination of her parental rights to her children. **AFFIRMED.**

Theresa Rachel, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Jessica R. Noll of Deck Law, PLC, Sioux City, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to two[1] of her children, H.S. and N.S., born in 2018 and 2016, respectively.[2] The juvenile court terminated the mother's parental rights as to both children under Iowa Code section 232.116(1)(d), (e), (g), and (*l*) (2020). Her rights to the youngest child were also terminated under paragraph (h) of section 232.116(1). Here, the mother challenges whether the statutory grounds for termination were proved and claims the loss of her rights is not in the children's best interests.

We review the termination of parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *Id.* at 774. Here, we choose to consider section 232.116(1)(e), which allows the court to terminated when it finds:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

---

[1] The mother's parental rights were previously terminated to two other children in 2015.

[2] The father's parental rights were also terminated. He does not appeal.

The mother only challenges the court's ruling as to the third element—whether she maintained significant and meaningful contact and made no reasonable efforts to resume care of the children in the six months preceding the termination hearing. In challenging whether this ground was proved, the mother asserts that she attended "many visits with her children" and "consistently asked for more time with the children." Even if we were convinced the mother's visitation attendance weighs in her favor,[3] maintaining communication and a place of importance within the children's lives are only some of the components of maintaining "significant and meaningful contact." *See* Iowa Code § 232.116(1)(e)(3). It also requires "a genuine effort to complete the responsibilities prescribed in the case permanency plan." *Id.* ("This affirmative duty, *in addition* to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, *and* requires that the parents establish and maintain a place of importance in the child's life." (emphasis added)); *see also Conjunctive/Disjunctive Canon*, *Black's Law Dictionary* (11th ed. 2019) ("The doctrine that in a legal instrument, *and* joins a

---

[3] According to reports from the family support specialists (FSS), the mother missed a large percentage of her scheduled visits. Based on the notes provided for June 16 to September 15, 2020, the mother attended eight of sixteen visits. According to a different FSS, during another three-month span, the mother was offered thirty-three visits and attended only four. The last FSS report before the March 1, 2021 termination hearing showed that of the eight scheduled visits between January 15 and February 9, the mother failed to confirm or did not attend six. And winter weather prevented another from taking place. During this same time period, DHS made the decision to begin offering the mother only one visit per week due to her attendance issues.

conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives.").

The Iowa Department of Human Services (DHS) became involved with the family this time in September 2019, after receiving reports the parents were using drugs around the children. That same month, the mother tested positive for methamphetamine. She tested positive for methamphetamine again in December[4] and in January 2020. After completing a substance-abuse evaluation in January, she was diagnosed with severe amphetamine-type/other stimulant substance disorder.[5] The mother was recommended to engage in substance-abuse treatment. And she did participate some. But on May 12, June 17 and 29, and August 13, she refused or claimed she was unable to provide a sample for a urinalysis drug test. As part of her treatment, the mother was recommended to attend three group sessions and one individual session each week. But as of the March 1, 2021 termination hearing, the mother had not been to an individual substance-abuse session since early December 2020 (approximately three months) and had not attended a group session since September 21, 2020 (more than five months). Additionally, following a mental-health evaluation completed in April 2020, the mother was diagnosed with anxiety, major depressive disorder, irritability and anger, and other personal psychological trauma. She was recommended and agreed to attend mental-health therapy. In July, her therapist

---

[4] The children were placed with their maternal aunt on a voluntary basis in December 2019. They were not formally removed from the mother's care until early March 2020. They remained in the care of the maternal aunt throughout the proceedings.

[5] The mother received other diagnoses as well, including severe cannabis use disorder.

provided an update that the mother had attended only six therapy sessions and had made only "limited progress on her treatment plan goals primarily due to her lack of attendance." The mother reengaged in therapy, but she quit attending again as of November 12, 2020. At the time of the termination hearing, the mother had not attended mental-health therapy in more than fifteen weeks.

We acknowledge the mother had surgery in mid-December 2020 and suffered some complications afterward. But the mother's implication that this medical procedure prevented her from engaging in the services required by her case plan is not supported by the evidence. The record shows the mother was released from the hospital within a day or so of the procedure. And while she had to return to the hospital due to an infection approximately three weeks later, she was released again later that same day. According to the mother's testimony at the termination hearing, she was well enough to begin a job at a restaurant on December 23—about a week after the surgery. She left that job but then resumed "about the first week of February." Plus, not insignificantly, the mother quit attending her group substance-abuse sessions and her mental-health therapy more than a month before she underwent the surgery. We cannot find the mother made a genuine effort to complete the responsibilities prescribed in the case permanency plan. Termination of her parental rights is proper under section 232.116(1)(e). *See In re T.S.*, 868 N.W.2d 425, 437–38 (Iowa 2015).

Next, the mother argues termination of her parental rights is not in the best interests of the children. *See* Iowa Code § 232.116(2). She lists several reasons, including that the children "would be deprived . . . of certain financial rights, such as child support, medical support, and inheritance from the parents." But "when

termination of parental rights occurs, other sources of financial support for the child may become available, and we do not read section 232.116(2) as directing courts to engage in a dollar-for-dollar weighing process." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). "Rather, the child[ren]'s safety and need for a permanent home are paramount concerns." *Id.* And the mother is not currently able to provide those things. Termination of the mother's parental rights is in the children's best interests.

We affirm the termination of the mother's parental rights. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (concluding the court need not discuss a step of the analysis when the parent did not dispute it); *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (deciding the parent has the burden to establish an exception to termination under section 232.116(3)).

**AFFIRMED.**